716 F.2d 1226
 4 Employee Benefits Ca 1865
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
Joseph P. MAZZOLA, Robert E. Buckley, Robert J. Costello,
William Spencer, William Jennings, D.E. Dehnert, V.J.
Kazarian, Keith Hansen, Lawrence J. Mazzola, H.J. Riboni,
Raymond Springer, Stewart Smith, Fred Castro, James Emmons,
The U.A. Local 38 Convalescent Fund, and The U.A. Local 38
Pension Fund, Defendants-Appellants.
 Nos. 82-4527, 82-4623.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 11, 1983.
Decided Aug. 23, 1983.
As Amended Oct. 3, 1983.
 
 Marc I. Machiz, Thomas L. Holzman, Washington, D.C., for plaintiff-appellee.
 Joseph L. Alioto, Lawrence Alioto, Alioto & Alioto, San Francisco, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before STEWART,* Associate Justice, and DUNIWAY and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 These are companion appeals from two judgments of the district court. Appellants are certain present and former members of the Board of Trustees of the Pension Fund of Local 38 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (Local Union 38), as well as the Union's Pension Fund and Convalescent Fund. First, appellants appeal the judgment wherein the district court found that the individual appellants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, (ERISA) 29 U.S.C. Secs. 1001 et seq. Second, appellants appeal the district court's judgment finding the individual appellants in contempt of court because they failed to post a $1 million indemnity bond as previously ordered by the court. We affirm the district court's judgment in each case.
 
 BACKGROUND
 
 2
 Because the district court's findings are not clearly erroneous, we affirm the findings and incorporate them into our discussion. Fed.R.Civ.P. 52(a); see also M & R Inv. Co., Inc. v. Fitzsimmons, 685 F.2d 283, 285 (9th Cir.1982).
 
 
 3
 Local Union 38 is a Northern California labor union. In 1953, the union and employers of its members established the union's "Pension Fund" to provide retirement benefits to union members and their beneficiaries. The Pension Fund is an employee benefit plan as defined by ERISA, 29 U.S.C. Sec. 1002(3), and, therefore, subject to ERISA coverage, 29 U.S.C. Sec. 1003(a). The individual appellants as trustees of the Pension Fund, were fiduciaries with respect to the Pension Fund under ERISA, 29 U.S.C. Sec. 1002(21)(A).
 
 
 4
 In 1956, the Convalescent Fund of Local Union 38 was established by the union and the signatory employers. The Convalescent Fund owns and operates a hotel, the Konocti Harbor Inn, which provides rooms at discounted prices, a summer camp, and a low-cost retirement housing project for participants of the Convalescent Fund and their families. From January 1, 1975 through November 30, 1978, the individual appellants also served as trustees of the Convalescent Fund. Thereafter, they served as an "Advisory Committee" to the sole trustee of the Convalescent Fund.
 
 
 5
 The participants of the Pension Fund and Convalescent Fund although substantially the same are not identical. Since January 1, 1975, the Convalescent Fund has had more participants than the Pension Fund. The eligibility requirements of the two funds have also differed. Moreover, some contributing employers of the Pension Fund have not been at the same time contributing employers of the Convalescent Fund.
 
 
 6
 Between January 1, 1975, the effective date of ERISA, and 1979, when the present action was initiated, the individual appellants, as trustees of the Pension Fund, engaged in several transactions that prompted the Secretary of Labor under 29 U.S.C. Sec. 1132(e), to bring this action charging the individual appellants with numerous violations of ERISA. In December 1975, the individual appellants made a $1 1/2 million loan of Pension Fund assets to the Convalescent Fund. The following year, they granted a moratorium on that loan as well as all other loans that the Pension Fund had made to the Convalescent Fund. When granting the moratorium they did not request amendments favorable to the Pension Fund on the terms of the loans, nor did they require any additional security. In 1978 and 1979, the individual appellants also granted the Convalescent Fund two extensions to repay a $500,000 loan originally granted in December 1974 and due November 1, 1978. When these extensions were granted the amount owed on the final payment was in excess of $400,000. In spite of this, the individual appellants did not alter in any way the terms of that loan, nor did they seek or receive additional security. The Secretary charged that in making the above, the individual appellants violated 29 U.S.C. Secs. 1104[1] and 1106(b)(2)[2].
 
 
 7
 In March 1977, Dr. Schwartz, a friend of an individual appellant and personal physician for another, was retained and paid $250,000 by the trustees to perform a feasibility study to determine the most profitable use of the Convalescent Fund's Konocti Harbor Inn. The Secretary contended that a comparable study of equal or superior quality could have been obtained for substantially less money. Thus, the Secretary charged that the individual appellants breached their fiduciary duties under 29 U.S.C. Sec. 1104.
 
 
 8
 In addition to the loans made to the Convalescent Fund, in 1975, the individual appellants made a loan of $650,000 of Pension Fund assets to a limited partnership known as S & F Spas for the conversion of a hotel to a health spa. One of the principals of the limited partnership was Dr. Schwartz. Prior to making this loan the Pension Fund trustees had approved a $2 1/4 million construction loan secured by the property on which the spa was to be constructed. The Secretary claimed that in approving the $650,000 loan, the individual appellants breached their fiduciary duties under 29 U.S.C. Sec. 1104.
 
 
 9
 The Secretary also asked the district court: (1) to enjoin permanently the individual appellants from violating their fiduciary duties to the Pension Fund or any other employee benefit plan; (2) to remove them from service as fiduciaries of the Pension Fund; (3) to enjoin them for five years from serving as fiduciaries of any employee benefit plan covered by ERISA and appoint suitable successor fiduciaries; (4) to rescind all transactions between the Pension Fund and the Convalescent Fund which the individual appellants caused to be entered into; and were in violation of ERISA; and (5) to direct the individual appellants to reimburse the Pension Fund for any present or future losses stemming from violations of the individual appellants' fiduciary obligations. The Secretary also sought costs of the suit and any further relief the district court deemed appropriate.
 
 
 10
 After a trial on stipulated facts before a magistrate, both parties submitted objections to the magistrate's recommendations. In its findings of fact and conclusions of law filed on November 17, 1981, the district court made a de novo determination of all the portions of the magistrate's recommendation to which objections were made. Upon reviewing the record and making extensive findings of fact, the district court concluded that the Pension Fund trustees' actions were to be reviewed under the objective "prudent person" test. Applying the prudent person test, the district court concluded that the individual appellants had breached their fiduciary duties under ERISA as alleged by the Secretary.
 
 
 11
 Specifically, the district court found that the individual appellants violated Sec. 1104(a)(1)(B) because the challenged loans and extensions of credit were not ones that a reasonably competent lender would have made, nor were they made using accepted procedures used by such a lender. In addition, the district court found that the challenged loans and extensions of credit were in violation of 29 U.S.C. Sec. 1104(a)(1)(A) because they were not made for the exclusive purpose of benefiting the Pension Fund. Both the Convalescent Fund loan and the S & F Spas loan also violated the diversification requirement of 29 U.S.C. Sec. 1104(a)(1)(C). The convalescent loan was also a prohibited transaction in violation of 29 U.S.C. Sec. 1106(b)(2) because the individual appellants acted on both sides of the transaction. Finally, the district court found that the trustees had not complied with accepted industry standards in selecting a consultant to perform the feasibility study of the Konocti Harbor Inn and had thereby imprudently discharged their duty in violation of 29 U.S.C. Sec. 1104(a)(1)(B). By overpaying Dr. Schwartz for the study, the trustees also violated 29 U.S.C. Sec. 1104(a)(1)(A).
 
 
 12
 Pursuant to 29 U.S.C. Sec. 1109(a)[3] the district court subjected the individual appellants to joint and several liability for losses resulting from breaches of their fiduciary duty. The district court granted restitution for the losses incurred by the Pension Fund as a result of loaning the $1 1/2 million at a reduced interest and paying an excess price for the feasibility study. The district court also ordered the individual appellants to post a $1 million indemnity bond to insure against potential future losses to the Pension Fund resulting from the $1 1/2 million Convalescent Fund loan and the $650,000 S & F Spa loan. The bond was due sixty days from the entry of judgment. In addition, the district court found it appropriate to appoint an investment manager to control the Pension Fund's investment and financial component for a term of ten years. In all other respects the individual appellants were permitted to act as trustees of the Pension Fund. The district court entered its judgment accordingly on July 9, 1982. Appellants moved the district court under Fed.R.Civ.P. 59 for a new trial or to alter or amend the judgment. The district court denied their motion on September 7, 1982. The district court also denied appellants' motion for a thirty-day extension of time to post the $1 million bond. Appellants timely filed an appeal from the judgment entered on July 9, 1982.
 
 
 13
 On September 13, 1982 the Secretary applied to the district court for an order to show cause why appellants should not be held in contempt for failing to post the $1 million bond as ordered in the judgment of July 9. The district court granted the Secretary's application and directed the Pension Fund trustees to show cause why they should not be held in contempt.
 
 
 14
 After a hearing on September 30, 1982, the district court found the individual appellants in contempt and granted them until November 2, 1982 to purge themselves of the contempt before incurring penalties. The Court warned that failure to comply would result in penalties of $100 per day for each trustee. On October 22, 1982 appellants timely appealed from the contempt judgment.
 
 ISSUES
 
 15
 On appeal appellants essentially contend that the district court erred by: (1) substituting its own judgment with regard to the amount of interest the individual appellants should have charged for the $1 1/2 million loan to the Convalescent Fund; (2) holding that the individual appellants overpaid Dr. Schwartz for the feasibility study; (3) imposing the $1 million bond; (4) appointing an investment manager for the Pension Fund and (5) finding the individual appellants in contempt of court for failing to post the $1 million bond.
 
 DISCUSSION
 
 16
 We discuss each issue separately and set forth the district court's findings and conclusions pertinent thereto in our analysis. Before addressing appellants' specific contentions, we must first determine whether the district court applied the appropriate test when examining the challenged actions of the individual appellants.
 
 
 17
 Appellants suggest that the appropriate test for reviewing the disputed transactions is the "business judgment rule." The record demonstrates that the district court applied the prudent person test. Our review of the applicable ERISA statute, its legislative history, and relevant case law convinces us that the district court applied the proper legal standard to the disputed transactions.
 
 
 18
 The standard of care imposed upon fiduciaries by ERISA is contained in 29 U.S.C. Sec. 1104(a)(1)(B) which provides in relevant part:
 
 
 19
 ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ... (emphasis added).
 
 
 23
 The explicit language of this section indicates that the prudent person test applies to fiduciary obligations under ERISA. Case law and the legislative history of ERISA both demonstrate that the source for the prudent person test set forth in Sec. 1104(a)(1)(B) is the prudent person test as developed in the common law of trusts.[4] Eaves v. Penn, 587 F.2d 453, 457 (10th Cir.1978); Morrissey v. Curran, 567 F.2d 546, 548-49 (2d Cir.1977); Marshall v. Teamsters Local 282 Pension Trust Fund, 458 F.Supp. 986, 990 n. 8 (E.D.N.Y.1978); S.Rep. No. 93-127, 93d Cong., 2nd Sess., reprinted in 1974. U.S.Code Cong. & Ad.News 4838, 4864-66.
 
 
 24
 The legislative history also instructs courts to interpret the prudent person rule "bearing in mind the special nature and purpose of employee benefit plans." H.R.Rep. No. 93-1280, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News at 5083; accord Marshall v. Glass/Metal Ass'n & Glaziers & Glassworkers Pension Plan, 507 F.Supp. 378, 383 (D.Haw.1980). ("[Section 1104] establish[es] uniform federal requirements to be interpreted both in the light of the common law of trusts, as well as with a view toward the special nature, purpose, and importance of modern employee benefit plans.").
 
 
 25
 Courts have also recognized that in enacting ERISA Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds. See Sinai Hospital of Baltimore v. National Benefit Fund for Hospital & Health Care Employees, 697 F.2d 562, 565 (4th Cir.1982).
 
 
 26
 Our review of the record convinces us that the district court properly applied the prudent person test. As to each transaction the district court considered whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment. See, e.g., Donovan v. Bierwirth, 680 F.2d 263, 271 (2nd Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 488, 74 L.Ed.2d 631 (1983); Marshall v. Glass/Metal Ass'n, 507 F.Supp. at 384; III A. Scott, The Law of Trusts, Sec. 227.1-2 at 1809-11 (1967) (hereinafter cited as Scott on Trusts ), Sec. 227.3 at 1811-12.
 
 THE $1 1/2 MILLION LOAN
 
 27
 Prior to January 1, 1975, the effective date of ERISA, the Pension Fund had already granted the Convalescent Fund $5 1/2 million in loans. In December 1975, the individual appellants, as trustees of the Convalescent Fund, sought from themselves, as trustees of the Pension Fund, a $1 1/2 million loan of Pension Fund assets. As trustees of the Pension Fund, the individual appellants granted the loan. When the $1.5 million loan was granted, the Convalescent Fund was in poor financial condition as evidenced by substantial operating losses and its inability to make regular payments on previous loans from the Pension Fund and a bank loan.
 
 
 28
 Before granting the loan the individual appellants also failed to ascertain the value of the property which the Convalescent Fund deeded as security for the loan. Although the Convalescent Fund's total property holding was appraised at $16 million, the Pension Fund received as security only that part of the property which did not include the resort facilities. The value of the property actually given as security was never determined. Moreover, a portion of the property offered as security was subject to prior rights of a bank and already was security for the Pension Fund's $5 1/2 million loan to the Convalescent Fund. The individual appellants, in granting the $1 1/2 million loan, failed to ascertain the extent to which the Pension Fund's interest in the property deeded as security would be subordinate to other security interests.
 
 
 29
 A government witness, Joseph Azrack, gave expert testimony regarding the prevailing standards to be applied by competent real estate lenders in making, pricing, and managing real estate secured loans. After reviewing the individual appellants' actions with regard to the $1 1/2 million loan, the expert witness noted several deficiencies in the manner in which trustees approved the loan. He opined that the individual appellants' conduct regarding this loan did not meet industry standards.
 
 
 30
 With regard to the $1 1/2 million loan, the district court found that the individual appellants violated 29 U.S.C. Sec. 1104(a)(1)(B) by failing to follow reasonably acceptable procedures. In addition, the district court also found that they violated 29 U.S.C. Secs. 1104(a)(1)(A) and (B) because: (1) they failed to ascertain the identity and value of the loan security; (2) they knew or should have known the loan presented an unreasonable risk of not being timely and fully paid without resort to the collateral; (3) they granted the loan below the prevailing interest rates for comparable mortgages at that time; (4) they acted on both sides of the loan transactions; and (5) they consistently transacted business with and for the Convalescent Fund at all relevant times for the purpose of aiding the Convalescent Fund at the expense of the Pension Fund. The district court found that the $1 1/2 million loan violated the diversification requirement of Sec. 1104(a)(1)(C).
 
 
 31
 On appeal appellants challenge the district court's conclusion that they violated their fiduciary obligations under ERISA by granting the loan below the prevailing interest rates for comparable mortgages at that time.
 
 
 32
 After reviewing the record we are convinced that the district court had ample basis to conclude that the trustees violated their fiduciary obligation by granting the loan at 8.5 percent interest. The Secretary's expert witness testified that the interest rate on long-term commercial mortgages at the time the $1 1/2 million loan was made ranged from 9.75 percent to ten percent. This was over one percent more than the interest rate actually allowed on the loan. The expert witness further testified that because the loan was secured by a resort, rather than an office building, shopping center or industrial property, the loan would have been priced one to three percent above the commercial rate. In addition, the expert testified that in light of California's usury law, a lender confronted with the possibility of making this loan would have chosen making the loan within the statutory ceiling of ten percent, making an out-of-state real estate loan, or making another sort of investment. Based on this evidence the district court properly concluded that the individual appellants breached their fiduciary duty by lending the money at 8.5 percent interest.
 
 
 33
 Appellants assert, however, that the expert's testimony was inadequate to support the district court's finding of an ERISA violation on this point because the testimony was based on a chart admitted solely for illustrative purposes. We find their argument meritless. The witness testified that he prepared the chart from sources that an expert in real estate development would ordinarily rely on to determine the interest rates during the period relevant to this loan. Based on the information provided by those sources, the expert opined that, absent California's usury ceiling, the prevailing rates for this type of loan would have been one to three percent higher than the 9.7 to ten percent listed on the chart. At the hearing, appellants made no attempt to cross-examine the expert on this point. On appeal, appellants cite nothing in the record which contradicts the expert's testimony.
 
 
 34
 Appellants contend that the difference between the interest rate actually charged and the interest rate which the district court found should have been charged was too small to warrant a finding of imprudence. We find this argument to be without merit. Appellants have failed to demonstrate that the district court's determination that a reasonably prudent trustee would have required a ten percent interest rate, rather than the 8.5 percent rate actually charged, is clearly erroneous. See Fed.R.Civ.P. 52(a). The difference between the two rates added up to a loss of over $110,000 since the loan was made. We cannot conclude that this sum is insubstantial.
 
 FEASIBILITY STUDY
 
 35
 In April 1977, the individual appellants as trustees of the Pension Fund selected Dr. Ernest Schwartz to prepare a feasibility study designed to inform them of the manner in which the Convalescent Fund could best use the Konocti Harbor Inn property. The individual appellants never inquired into Dr. Schwartz's qualifications to prepare the study. The evidence shows that Dr. Schwartz had never made a feasibility study, or written a report on the potential markets and customers for a recreational facility, and had not specialized in advising others as to recreational resort properties or other specific types of real estate. Indeed, the individual appellants never discussed Dr. Schwartz's oral proposals with any consultants or experts, nor did they interview or solicit bids from other potential consultants. Although Dr. Schwartz did not complete the study until September 1977, the individual appellants paid him the entire $250,000 which he had requested as payment for the study in June 1977.
 
 
 36
 After submitting the study to the individual appellants, Dr. Schwartz did not extensively discuss its implementation with them nor did he give them further guidance or advice regarding the contents of the study. Moreover, he did not perform any follow-up service or submit any update to the study.
 
 
 37
 In the proceedings below, the Secretary presented expert testimony regarding the prevailing standards for selection of a consultant to perform a feasibility study. In essence, the expert testified that the prevailing practice was to obtain bids and written proposals from several consultants and to withhold some portion of the consultant's fee pending satisfactory completion of the study.
 
 
 38
 The individual appellants' failure to inquire into Dr. Schwartz's qualifications and to follow the generally recognized procedures for selection of a consultant refutes their assertion that they took a "conscientious and deliberative approach" toward this $250,000 expenditure of Pension Fund assets. Indeed, the appellants do not challenge the district court's finding that the Secretary's expert witness correctly stated the prevailing industry standards and that their conduct was deficient because they failed to follow those procedures. Instead, relying on Sec. 201 of III Scott on Trusts, appellants merely assert that they did not violate ERISA by acting imprudently because they relied on counsel's advice that the $250,000 expenditure conformed to ERISA requirements. This asserted defense fails. Nothing in the record supports their contention that they received any advice from counsel on this matter. Even if such advice had been received, reliance on counsel's advice, without more, cannot be a complete defense to an imprudence charge. See, e.g., Donovan v. Bierwirth, 680 F.2d at 272. Moreover, the section in Scott relied on by appellants is part of a discussion of when a trustee is not negligent and breaches a duty based on a mistake of law due to advice of counsel. III Scott on Trusts, Sec. 201, at 1651. Here, in retaining Dr. Schwartz to perform the feasibility study the individual appellants' actions can hardly be deemed "not negligent." Moreover, their breach of duty under ERISA was not based on a mistake of law. Their breach stemmed from their failure to follow acceptable procedures in retaining a consultant to perform the feasibility study.
 
 
 39
 With regard to investment decisions of a trustee and reliance on counsel's advice Scott provides:
 
 
 40
 In reaching his conclusion [the trustee] may take into consideration advice given to him by attorneys, bankers, brokers and others whom prudent men in the community regard as qualified to give advice. He is not justified, however, in relying wholly upon the advice of others, since it is his duty to exercise his own judgment in the light of the information and advice which he receives.
 
 
 41
 Id. Sec. 227.1 at 1809. (emphasis added).
 
 
 42
 Thus, in evaluating an allegation of imprudence under ERISA, reliance on counsel's advice is, at most, a single factor to be weighed in determining whether a trustee has breached his or her duty.
 
 
 43
 On the record before us and in light of the individual appellants' failure to inquire into Dr. Schwartz's qualifications and to follow accepted standards for hiring a consultant, we agree with the district court's conclusion that the Pension Fund trustees acted imprudently by paying Dr. Schwartz $250,000 for the feasibility study and thereby breached their fiduciary duty under Sec. 1104(a)(1)(B) of ERISA.[5] See, e.g., Marshall v. Glass/Metal Ass'n, 507 F.Supp. 378, 384 (D.Haw.1980) (trustees violated their fiduciary duties under Sec. 1104(a)(1)(B) of ERISA by committing pension plan assets without adequate procedures or evaluation of the risks involved and alternatives available).
 
 
 44
 Appellants have also failed to demonstrate that the district court clearly erred in finding that the study was worth only $50,000. Dr. Schwartz kept no record of the amount of hours spent on the project. The Secretary's expert testified that a professionally completed feasibility study of acceptable quality, covering the same subject areas as the Schwartz study, would have cost the trustees no more than approximately $100,000 in 1977 dollars. The expert specified numerous deficiencies in the Schwartz study. He noted that: it largely failed to reach specific conclusions regarding recommendations as to each key subject area; it did not provide any substantial market analysis; it did not develop a coordinated program for physical development of the many general proposals set forth in the study or for financing such development; it did not adequately assess the risks or probabilities of success of each proposal; it was not written in a sufficiently comprehensible fashion; and it failed to provide the trustees with sufficient analysis and grounds for making informed decisions. The expert also testified that approximately $50,000 to $100,000 would have to be expended to raise the Schwartz study up to the level of a professionally competent document.
 
 
 45
 Similarly, no merit exists to appellants' claim that the Secretary's expert had the benefit of hindsight when critiquing the Schwartz study. The expert's testimony established the losses suffered by the Pension Fund as a result of the imprudent manner of selecting a consultant. Had the individual appellants followed the prevailing procedure of withholding some of the fee until a satisfactory study was completed, they could have insisted on an upgraded study before disbursing to Dr. Schwartz the balance due. They were unable to do so, because they paid Dr. Schwartz the entire $250,000 in one lump sum several months before he submitted his study. Appellants have not shown that the district court's finding regarding the actual value of Dr. Schwartz's feasibility study was clearly erroneous.
 
 APPROPRIATENESS OF THE REMEDY
 
 46
 In addition to ordering restitution for the losses the Pension Fund suffered as a result of the below-market-interest rate on the $1 1/2 million loan and the excess compensation for the feasibility study, the district court found the Pension Fund trustees jointly and severally liable for potential losses in connection with the $1 1/2 million loan to the Convalescent Fund and the $650,000 loan to the S & F Spas. To insure the Pension Fund against such potential losses, the district court ordered the individual appellants to post a $1 million cash or corporate surety bond which is to remain in effect "until the outstanding balance on loans between the Pension Fund and S & F Spas is less than $2.25 million, until the outstanding balance on loans between the Pension Fund and the Convalescent Fund is less than $4.9 million, and until neither the Convalescent Fund nor S & F Spas is in default on any obligation owed to the Pension Fund." The district court also ordered the appointment of an investment manager to manage the Pension Fund's assets for a term of ten years. Appellants challenge both the bond requirement and the appointment of an investment manager.
 
 
 47
 Where there has been a breach of fiduciary duty, ERISA grants to the courts broad authority to fashion remedies for redressing the interests of participants and beneficiaries. Eaves v. Penn, 587 F.2d at 462; Marshall v. Snyder, 572 F.2d 894, 901 (2d Cir.1978). ERISA, 29 U.S.C. Sec. 1109, specifically provides that:
 
 
 48
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
 
 
 49
 In effectuating this provision, Congress intended the courts to draw on principles of traditional trust law. Eaves v. Penn, 587 F.2d at 462. "Traditional trust law provides for broad and flexible remedies in cases involving breaches of fiduciary duty." Id. Courts also have a duty "to enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust." Id.; accord Marshall v. Glass/Metal Ass'n, 507 F.Supp. at 385; Freund v. Marshall & Ilsley Bank, 485 F.Supp. 629, 643 (W.D.Wis.1979).
 
 
 50
 Appellants' challenge to the $1 million bond requirement is that common law precludes courts from surcharging them for a breach of trust where no loss results to the trust. Contrary to appellants' assertion, the $1 million bond is not a surcharge. The bond is a security to protect the Pension Fund in the event of losses from the two loans the district court found to be risky and inadequately secured. This remedy is consistent with common law remedies. At common law "[i]f breaches of trust have been committed, or are threatened, the court may order the giving of a bond to secure faithful performance in the future, or may increase the amount of the existing bond, or may require new sureties." G. Bogert, The Law of Trusts and Trustees Sec. 861, at 11-12 (1982) (footnote omitted).[6] Proof of loss is not a prerequisite to imposing a bonding requirement. The purpose of imposing a bond in cases such as the present is not to compensate for past losses, rather it is to safeguard the beneficiaries' interests and to protect the fund against future losses.
 
 
 51
 Based on the district court's extensive findings regarding the ERISA violations and the common law of trust, we conclude that the district court properly exercised its broad discretion under Sec. 1109 in requiring appellants to post a $1 million bond.[7]
 
 
 52
 Alternatively, appellants argue that the judgment should be modified by striking the language in the bonding requirement which provides that the bond be continued "until neither the Convalescent Fund nor S & F Spas is in default on any obligation owed to the Pension Fund." Appellants contend that the effect of this language is to hold them liable for antecedent loans which are not part of the present litigation. We find their argument unpersuasive.
 
 
 53
 In its conclusions of law, the district court explicitly stated that the bond was to insure the Pension Fund against all losses stemming from the $1 1/2 million Convalescent Fund loan and the $650,000 S & F Spas loan. We find that the district court inserted the challenged language to prevent the individual appellants from eliminating the bond requirement by nominally "paying off" the loans for which the bond is required by adding their outstanding balance to loans not covered by the bond. We see no valid reason to alter the district court's carefully drafted judgment.
 
 INVESTMENT MANAGER
 
 54
 The district court appointed an investment manager to assume control over the assets of the Pension Fund for ten years because it found that such a remedy was necessary to protect the Pension Fund as well as the interests of the beneficiaries and participants. In fashioning this remedy the district court explained:
 
 
 55
 One consideration warranting this remedy is the making of the loans (and subsequent extensions and moratorium) between the Convalescent Fund and the Pension Fund by an interlocking set of trustees. A conflict of interest situation exists because these same people are on both sides of the transaction as borrower and lender. Even when the Convalescent Fund has a sole trustee, the trustees of the Pension Fund continue to act as his Advisory Committee.... A position of divided loyalties has arisen which is inconsistent with the independent and undivided loyalty to which the Pension Fund is entitled. Further facts supporting indeed, requiring appointment of an investment administrator include the lack of diversification of the Pension Fund portfolio, the trustees' failure properly to underwrite loans, their failure to secure the most advantageous interest rates, as well as their failure properly to investigate and evaluate the circumstances surrounding Dr. Schwartz's fee demand and his feasibility study. All these facts establish a general pattern of failure on the part of the trustees properly to acquit their fiduciary responsibilities in the management of the Fund assets--a pattern which the evidence shows will continue absent effective remedial measures. Therefore, it is necessary to order immediate and continuing supervision of Pension Fund investment and financial activities by a competent, impartial and independent administrator or administrators.
 
 
 56
 The district court was careful to note that this remedy was limited to divesting them of their investment functions as trustees of the Pension Fund. In all other respects, they could continue to perform their duties.
 
 
 57
 Appellants argue, however, that the district court abused its discretion by appointing an investment manager because (1) the main reason for appointing the manager was the interfund transactions which the district court erroneously concluded were prohibited by Sec. 1106(b)(2) of ERISA; (2) such relief is inappropriate unless the Pension Fund incurs losses, there is proof of dishonesty or self-dealing or there exist violations more serious than lack of diversification; (3) the beneficiaries of the Pension Fund were not given notice of the appointment of an investment manager, and (4) any investment manager selected by the court will be inappropriate because he or she will favor stock market investments rather than investments generating employment for union members. We reject each of appellants' arguments.
 
 
 58
 The record below clearly refutes appellants' contention that the district court's "main reason" for appointing the investment manager was the interfund transactions between the individual appellants as trustees of both the Pension Fund and Convalescent Fund. As noted above, the district court enumerated several independent grounds that mandated appointing an investment manager in this case.
 
 
 59
 Moreover, the district court did not err in finding a Sec. 1106(b)(2) violation. In the joint pretrial statement, appellants stipulated as follows:
 
 
 60
 At all times from January 1, 1975 to the present:
 
 
 61
 (a) some participants of the Pension Fund have not been participants of the Convalescent Fund;
 
 
 62
 (b) some participants of the Convalescent Fund have not been participants of the Pension Fund;
 
 
 63
 (c) there have been a greater number of participants in the Convalescent Fund than in the Pension Fund; and
 
 
 64
 (d) some contributing employers of the Pension Fund have not at the same time been contributing employers of the Convalescent Fund.
 
 
 65
 When appellants became aware that this stipulation could establish a per se violation of their fiduciary duty of undivided loyalty, they sought to relieve themselves of it. After an extended hearing the district court found that appellants were bound by the stipulation. They now contend that the district court committed prejudicial error by refusing to allow proof of the "substantial identity" of the Pension Fund and Convalescent Fund members. Even if the district court had allowed such evidence, it would not have aided appellants.
 
 
 66
 In Cutaiar v. Marshall, 590 F.2d 523 (3d Cir.1979) the Third Circuit held that, subject to the Secretary's authority to grant an exemption under Sec. 1108(a),[8] Sec. 1106(b)(2) creates a per se prohibition against a loan between two funds where the trustees are identical but the participants and beneficiaries are not. Id. at 529, cited with approval in M & R Inv. Co., Inc. v. Fitzsimmons, 685 F.2d 283, 287 (9th Cir.1982).
 
 
 67
 In Cutaiar, the court elaborated on the blanket prohibition of Sec. 1106(b)(2) as follows:
 
 
 68
 Fiduciaries acting on both sides of a loan transaction cannot negotiate the best terms for either plan. By balancing the interests of each plan, they may be able to construct terms which are fair and equitable for both plans; if so, they may qualify for a [29 U.S.C. Sec. 1108] exemption. But without the formal procedures required under Sec. 1108, each plan deserves more than a balancing of interests. Each plan must be represented by trustees who are free to exert the maximum economic power manifested by their fund whenever they are negotiating a commercial transaction. Section [1106(b)(2) ] speaks of "the interests of the plan or the interests of its participants or beneficiaries." It does not speak of "some" or "many" or "most" of the participants. If there is a single member who participates in only one of the plans, his plan must be administered without regard for the interests of any other plan. 590 F.2d at 530 (emphasis added).
 
 
 69
 We agree with the Third Circuit that this per se prohibition is consistent with the remedial purposes of ERISA, for "[a]t the heart of the fiduciary relationship is the duty of complete and undivided loyalty to the beneficiaries of the trust." Freund v. Marshall & Ilsley Bank, 485 F.Supp. at 639 (W.D.Wis.1979).
 
 
 70
 In the case before us the individual appellants never offered to show that the members of both the Pension Fund and Convalescent Fund were identical. Thus, they were not prejudiced by the district court's refusal to allow evidence of "substantial identity" between the two funds. Therefore, the district court properly found that the individual appellants violated Sec. 1106(b)(2) by granting the $1 1/2 million loan to the Convalescent Fund as well as the extension and the moratorium on debts owed to the Pension Fund.
 
 
 71
 We also reject appellants' contention that the ERISA violations found by the district court are insufficient to support the appointment of an investment manager. The Pension Fund in fact incurred substantial losses as a result of the below-market-interest-rate charged to the Convalescent Fund and the overpayment to Dr. Schwartz. The record evinces numerous other ERISA violations that clearly support the remedy fashioned by the district court. Appellants failed: (1) to underwrite properly the $1 1/2 million loan to the Convalescent Fund and the $650,000 loan to S & F Spas; (2) to require additional security or consideration in exchange for the extensions or moratorium on monies owed to it; (3) to diversify its investments; (4) to use accepted procedures in hiring Dr. Schwartz to perform the feasibility study; and (5) to act for the exclusive benefit of the Pension Fund's beneficiaries and participants by acting on both sides of the interfund transactions. The district court found that ERISA violations would continue unless the individual appellants ceased to control the Pension Fund's investment assets.
 
 
 72
 At common law, a court could completely remove a trustee if the court found that continuation as a trustee would harm the beneficiary's interests. II Scott on Trusts Sec. 107, at 841. Under the broad remedial provision of ERISA courts have also found removal of fiduciaries to be an appropriate remedy upon findings of imprudence, divided loyalties, and prohibited transactions. See, e.g., Freund v. Marshall & Ilsley Bank, 485 F.Supp. 629 (W.D.Wis.1979); Marshall v. Kelly, 465 F.Supp. 341 (W.D.Okl.1978). Thus, in the present case where the trustees committed numerous ERISA violations, the district court acted well within its broad discretion in divesting the individual appellants of their investment functions as trustees of the Pension Fund.
 
 
 73
 Appellants also challenge the appointment of an investment manager because the district court did not give the beneficiaries of the Pension Fund an opportunity to object. Appellants' reliance on Fed.R.Civ.P. 23 in support of this contention is misplaced because Rule 23 applies to class action suits.
 
 
 74
 Although at common law beneficiaries' desires were considered in appointing new trustees, in interpreting the fiduciary provisions of ERISA Congress cautioned courts not to rely exclusively on the common law. See Marshall v. Teamsters Local 282 Pension Trust Fund, 458 F.Supp. at 990. A court should consider the "special nature, purpose, and importance of modern employee benefit plans." Marshall v. Glass/Metal Ass'n, 507 F.Supp. at 383. Indeed, Congress has indicated that certain elements of conventional trust law should not be incorporated into ERISA's fiduciary provisions. As an example Congress cited the common law rule of carrying out a settlor's intent even if it permitted deviations from applicable fiduciary requirements. See, e.g., S.Rep. No. 93-127, 93d Cong., 1st Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4865. In light of the legislative history and the explicit language of Sec. 1109, we agree with the Secretary that Congress did not intend to require that beneficiaries be given notice and an opportunity to object before a court-ordered change in the management of a plan is instituted. To hold otherwise might eviscerate the explicit power Congress gave courts to remove fiduciaries. Furthermore, the procedural quagmire which could result if such a requirement were imposed militates against imposing a notice requirement.
 
 
 75
 Finally, appellants assert that the new investment manager is inappropriate because he or she will favor stock market investments as opposed to those generating employment for union members. Nothing in the record, however, suggests that a court-appointed investment manager will make investments in a manner inconsistent with ERISA.
 
 CONTEMPT
 
 76
 In the second appeal appellants challenge the district court's September 30 order finding the individual appellants in contempt and imposing $100 daily fines per trustee for failing to post the $1 million bond by September 7, 1982. The sole issue before us is whether the district court abused its discretion in holding the individual appellants in contempt. See United States v. Powers, 629 F.2d 619, 624 (9th Cir.1980); accord V.T.A. Inc. v. Airco, Inc., 597 F.2d 220, 226 (10th Cir.1979). We find no abuse of discretion.[9]
 
 
 77
 Absent a stay, "all orders and judgments of courts must be complied with promptly." Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975). In the present case the bond requirement was not stayed. The record clearly demonstrates that the Secretary established a prima facie case that the individual appellants failed to comply with the district court's order requiring them to post the bond by September 7. See United States v. Rylander, 656 F.2d 1313, 1318 (9th Cir.1981), rev'd on other grounds --- U.S. ----, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The individual appellants then bore the burden of demonstrating that they were unable to comply. See id.[10] To satisfy this burden the individual appellants were required to show "categorically and in detail" why they were unable to comply with the court's previous order. See id. They failed to satisfy this burden. Indeed, at the contempt hearing the individual appellants admitted, through their counsel, that collectively they had sufficient assets to post the bond. On appeal they admit that they "tended not to come to grips with the reality of having to raise $1 million while there was still some hope that the court might ease the requirements or even eliminate it" and that they put off posting the bond during post-trial negotiations. Appellants' assertions of their good faith efforts to comply with the order are irrelevant. Intent is not an issue in civil contempt proceedings. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); accord Jim Walter Resources, Inc. v. International Union, UMW, 609 F.2d 165, 168 (5th Cir.1980). The sole question is whether a party complied with the district court's order. See McComb, 336 U.S. at 191, 69 S.Ct. at 499; Jim Walter Resources, 609 F.2d at 169. Appellants did not. They also failed to present a cognizable defense. In these circumstances a finding of contempt was within the district court's discretion.
 
 
 78
 We also reject appellants' contention that the district court abused its discretion by denying their motion for a continuance to allow the trustees to introduce their depositions regarding their financial condition. The record demonstrates that at the September 30 hearing the district court was willing to hear any testimony regarding the trustees' ability or inability to post the bond. Appellants failed to proffer any evidence relevant to that issue. The only evidence proffered was the testimony of Frank Sullivan, administrator of the union trust funds. Mr. Sullivan admitted that he knew nothing about the individual appellants' financial conditions. Appellants had ample notice that they had to show cause on September 30, 1982. On that date they failed to present any evidence relevant to the issue of their inability to post the bond. Their ignorance as to the burden of proof does not excuse them from having to show cause on that date. Thus, the district court did not abuse its discretion in denying the request for a continuance. Moreover, the district court allowed the trustees until November 2, 1982 to purge themselves of contempt by posting the bond.
 
 
 79
 The district court judgments are AFFIRMED.
 
 
 
 *
 Hon. Potter Stewart, Retired Associate Justice, United States Supreme Court
 
 
 [1]
 29 U.S.C. Sec. 1104, which discusses the fiduciary duties under ERISA, provides in its entirety:
 (a)(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan;
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.
 (2) In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).
 (b) Except as authorized by the Secretary by regulation, no fiduciary may maintain the indicia of ownership of any assets of a plan outside the jurisdiction of the district courts of the United States.
 (c) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)--
 (1) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and
 (2) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.
 
 
 [2]
 29 U.S.C. Sec. 1106(b)(2) reads:
 (b) A fiduciary with respect to a plan shall not--
 (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries....
 
 
 [3]
 29 U.S.C. Sec. 1109(a) addresses the liability for breach of fiduciary duty. This section provides:
 (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.
 
 
 [4]
 At common law the prudent person rule applied to trustee investment decisions. See III Scott on Trusts Sec. 187.2, at 1514 and n. 2; Secs. 227-227.3, at 1805-12
 
 
 [5]
 Appellants' assertion that the prohibited transaction rules of Sec. 1106 are inapplicable to Dr. Schwartz's study is irrelevant. The Secretary charged the Pension Fund trustee with a violation of Sec. 1104. The applicability of Sec. 1104 is in no way affected by the applicability of Sec. 1106
 
 
 [6]
 In a footnote to this section Bogert notes that, under Sec. 7-304 of the Uniform Probate Code, a court may require the trustee to file a bond if the court deems it "to be necessary to protect the interest of the beneficiaries." Bogert, Trusts and Trustees Sec. 861, at 11-12 n. 26
 
 
 [7]
 Contrary to appellants' claim, the district court in imposing the bond did not indulge in a presumption of guilt. The district court ordered the bond after it made extensive findings of fact and concluded that the Pension Fund trustees had committed numerous fiduciary breaches under ERISA
 
 
 [8]
 Section 1108(a) provides:
 The Secretary shall establish an exemption procedure for purposes of this subsection.
 Pursuant to such procedure, he may grant a conditional or unconditional exemption of any fiduciary or transactions, or class of fiduciaries or transactions, from all or part of the restrictions imposed by sections 1106 and 1107(a) of this title. Action under this subsection may be taken only after consultation and coordination with the Secretary of the Treasury. An exemption granted under this section shall not relieve a fiduciary from any other applicable provision of this Act. The Secretary may not grant an exemption under this subsection unless he finds that such exemption is--
 (1) administratively feasible,
 (2) in the interests of the plan and of its participants and beneficiaries, and
 (3) protective of the rights of participants and beneficiaries of such plan.
 Before granting an exemption under this subsection from section 1106(a) or 1107(a) of this title, the Secretary shall publish notice in the Federal Register of the pendency of the exemption, shall require that adequate notice be given to interested persons, and shall afford interested persons opportunity to present views. The Secretary may not grant an exemption under this subsection from section 1106(b) of this title unless he affords an opportunity for a hearing and makes a determination on the record with respect to the findings required by paragraphs (1), (2), and (3) of this subsection.
 
 
 [9]
 Appellants assert that the bond requirement was an order to pay money and, therefore, a writ of execution instead of contempt, was the appropriate method to enforce the judgment. We find appellants' argument unpersuasive. The judgment ordering the posting of a bond is an order to post security, not an order to pay money. Even if the bond requirement was deemed to be an order to pay money just as an equitable decree of restitution ordering the payment of money may be enforced through a contempt action, see, e.g., McComb v. Jacksonville Paper Co., 336 U.S. 187, 193-94, 69 S.Ct. 497, 500-501, 93 L.Ed. 599 (1949); Tobin v. La Duke, 190 F.2d 677, 678 (9th Cir.1951); Usery v. Fisher, 565 F.2d 137, 139-40 (10th Cir.1977), so may an order requiring a party to post a bond. In Usery, the Tenth Circuit specifically held that a court could not require the government to resort to execution or garnishment before making available its contempt power. 565 F.2d at 140
 The cases relied on by appellants in support of their argument were decided prior to McComb, Tobin and Usery. We agree with the Secretary that these latter cases present the better view.
 Moreover, orders to remedy breaches of fiduciary duty, that mandate payment of money as restitution are equitable in nature. See, e.g., Local No. 92, Int'l Ass'n of Bridge Workers v. Norris, 383 F.2d 735, 741 (5th Cir.1967); III Scott on Trusts Sec. 199.3, at 1639-40. In enacting ERISA Congress intended to provide courts with the broad and flexible equitable remedies of traditional trust law in cases involving breaches of fiduciary duty. See Eaves v. Penn, 587 F.2d at 462. Thus, in light of McComb and its progeny and the legislative history of ERISA, an order to pay money under ERISA is enforceable through contempt.
 
 
 [10]
 Appellants rely on Maggio v. Zeitz, 333 U.S. 56, 72-78, 68 S.Ct. 401, 409-412, 92 L.Ed. 476 (1948) for the proposition that the Secretary bore the initial burden of showing their ability to comply with the district court's order. Their reliance on Maggio is misplaced. Maggio is consistent with the burden of proof allocation enunciated in Rylander. See Maggio, 333 U.S. at 75-76, 68 S.Ct. at 411-412