Dennis E. WHITFIELD, Deputy Secretary of the United States
Department of Labor, Plaintiff,

v.

Malcolm COHEN, Miller Druck Company, Inc., and the Miller Druck Company, Inc. Employee Stock Ownership Plan, Defendants.

No. 86 Civ. 9751 (RWS).

United States District Court,
S.D. New York.

March 7, 1988.

Office of the Solicitor, Washington, D.C., for the U.S. Dept. of Labor Plan Benefits Sec. Div.; Bruce F. Rinaldi, Linda N. Winter, of counsel.

Altieri, Kushner, Miuccio & Frind, P.C., New York City, for defendants; Howard Rosenstein, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Dennis E. Whitfield, Deputy Secretary of the United States Department of Labor (the "Secretary"), has moved for summary judgment under Rule 56, Fed.R. Civ.P., against defendant Malcolm Cohen ("Cohen"), Miller Druck Company, Inc. ("Miller Druck") and the Miller Druck Company, Inc. Employee Stock Ownership Plan (the "Plan"). Upon the findings and conclusions set forth below, summary judgment will be entered on behalf of the Secretary.

*Prior Proceedings*

The Secretary filed the complaint in this action on December 22, 1986, alleging violations of the fiduciary provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, by Cohen and Miller Druck, named fiduciaries of the Plan. Following discovery and the submission of briefs, affidavits and statements under Local Rule 3(g), oral argument was held on the instant motion on December 4, 1987.

*Summary Judgment*

In order to grant summary judgment, this court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried,

while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985). Summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire*, 804 F.2d at 12.

The Secretary's motion presents two principal legal issues: first, whether Cohen breached his fiduciary duty as trustee of the Plan in connection with the investment of Plan assets with Penvest, Inc. ("Penvest"), an investment management company, and, second, whether the Secretary's action is barred by the three year statute of limitations contained in § 413(a)(2) of ERISA, 29 U.S.C. § 1113(a)(2). As to the second issue, as will be more fully set forth below, there is no dispute on the material facts.

As to the first issue, there is some factual disparity between the accounts given in Cohen's deposition, taken on August 12, 1987 ("Cohen Deposition") and his affidavit, sworn to November 18, 1987 ("Cohen Affidavit") submitted in opposition to the instant motion with respect to Cohen's pre-investment investigation of Penvest and one of its principals, Forest K. Bedell ("Bedell"). A review of Cohen's deposition and his affidavit reveals that the disparity amounts, for the most part, to a difference between specific answers and general conclusions concerning Cohen's investigation of Penvest and Bedell. For example, in his affidavit, Cohen states that he knew Bedell for approximately three years, that he personally questioned Bedell concerning the investment philosophy of Penvest, and that he relied on recommendations from other sources in selecting Penvest. Cohen Affidavit ¶ 9. At his deposition, Cohen stated that he had met Bedell prior to the time Miller Druck began searching for plan investments, that he had asked Bedell specifically what Penvest's investments would be and that Bedell had told him they would be in second mortgages, and that Bedell had

been highly recommended to him by Martin Singer ("Singer"). Cohen Deposition at 15–17, 23.

█ On the other hand, Cohen's deposition contains several direct answers to specific questions concerning Cohen's reliance on the investigation of Joseph Fagone ("Fagone") who was subsequently appointed a co-trustee and is now dead. These answers belie the conclusions set forth in his affidavit as to the thoroughness of his own independent investigation. *Compare* Cohen Deposition at 20–22, 26–28, 35–38, 46 *with* Cohen Affidavit ¶s 8 & 9. Fed.R.C.P. 56(e) requires the non-moving party to set forth "specific facts" that are in dispute to preclude entry of summary judgment. Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York provides that facts not controverted are deemed to be admitted. *Capano Music v. Myers Music, Inc.*, 605 F.Supp. 692, 697 (S.D.N.Y.1985). As this Circuit held in *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978), the opponent of a motion for summary judgment may not rely on "mere conclusory allegations or denials," but must set forth "concrete particulars" to preclude entry of summary judgment.

Thus, although Cohen's affidavit does, as noted, supplement his prior deposition testimony, the conclusory statements set forth in his affidavit are legally insufficient to controvert his prior deposition testimony. *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572, 577–79 (2d Cir. 1969); *Foster v. Arcata Assoc., Inc.*, 772 F.2d 1453, 1462–63 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). Our Circuit stated in *Perma Research* that to allow a party to raise an issue of fact in this fashion "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Research*, 410 F.2d at 578. Holding that the object of summary judgment is to discover whether one side has no support for its version of the facts, and thereby to avoid unnecessary trials, the Court in *Perma Research* affirmed the Honorable Frederick V.P. Bryan's award of summary judgment for the defendant.

The Court of Appeals for the Ninth Circuit has recently adopted the Second Circuit's reasoning, holding in *Foster v. Arcata Assoc.*, 772 F.2d at 1462, that a declaration submitted by plaintiff in opposition to defendant's motion for summary judgment that directly contradicted her previous deposition testimony was not sufficient evidence under Rule 56 to preclude the entry of summary judgment. The Court, in considering only her previous deposition testimony as credible, and accepting the moving party's facts as uncontroverted, affirmed the district court's entry of summary judgment. *Foster v. Arcata Assoc.*, 772 F.2d at 1462–63.

It is appropriate under these circumstances to disregard Cohen's conclusory affidavit to the extent that it is inconsistent with his prior deposition testimony. The material facts not in dispute and set forth below permit the entry of summary judgment.

*Facts*

Except as noted, the facts are derived from the Secretary's Local Rule 3(g) statement supported by exhibits, affidavits and deposition testimony.

Miller Druck is a New York corporation that provides marble and stone for building construction. It established the Plan in 1978, with a beginning fund of $61,207.00. In February 1980 and 1981, Miller Druck made two contributions in the amount of $270,291.00 and has made subsequent periodic contributions. For Plan year ending May 31, 1982, the Plan had net assets of $793,477.10. The Plan's annual financial statement, for the year ending May 31, 1986 reports Plan assets of $1,319,366.00.

Miller Druck is a named fiduciary under the Plan and is responsible for establishing a funding policy and communicating that policy to the trustee, appointing the trustee and monitoring his performance, and appointing an investment manager and monitoring the performance of that investment manager. When the Plan was created, Cohen and Fagone were appointed trustees. Following Fagone's death in September

1980, Cohen became the sole trustee of the Plan and, under Article XI of the Plan document, the named fiduciary with respect to investment of Plan assets.

Cohen is also the president and majority stockholder of Miller Druck. At the time of his death, Fagone was described by Cohen as the "general factotum" at Miller Druck. Fagone had started as a glazier with the company and had no educational background or employment experience in finance or investments. In his affidavit, Cohen stated that Fagone had served for twelve years as administrator of a marble workers pension plan and previously had served as an administrator of a "local granite plan". Cohen Affidavit ¶ 6.

Five to six months prior to December 24, 1980, Fagone told Cohen that Bedell was interested in managing the assets of the Plan. Cohen agreed to have Fagone find out what Bedell could do for the Plan. Fagone reported his findings orally to Cohen. This conversation was never memorialized in writing. According to Cohen, Fagone advised him that Bedell was a smart person who could do the job. In his affidavit, Cohen indicated that other unspecified references supported Fagone's conclusions as to Bedell's qualifications.

Prior to the actual transfer of Plan assets to Penvest, Fagone had performed, at Cohen's request, the only investigation of the qualifications of Penvest to manage the Plan's assets. Cohen did not make independent inquiries into the finances of Penvest and did not review any financial statements, or any other written material, from Penvest. The extent of Cohen's knowledge of the details of Penvest's investment policy was that its investments were in second mortgages which were "a relatively conservative type of investment." Cohen Affidavit ¶ 8. Cohen did not investigate the location or specific value of the secured properties.

Fagone did not advise Cohen of Bedell's educational background or employment experience or of other pension plans that had placed money with Penvest. Cohen did not receive any references or recommendations from other investors in Penvest. Fagone did not provide Cohen with alternate proposals from other investment management firms. Thus, Cohen did not compare the performance of Penvest with the performance of other investment management firms prior to placing Plan assets with Penvest, nor did Cohen seek professional advice regarding the qualifications of Penvest. Cohen never determined whether Bedell or Penvest were registered with the SEC as an investment advisor. In fact, neither were. Finally, Cohen did not inquire into the fees that would have to be paid to Penvest.

On December 24, 1980 Cohen transferred $270,000.00 of Plan assets to Penvest for investment purposes. On July 9, 1981 Cohen transferred $10,000.00 of Plan assets to Penvest for investment purposes. At the time of these investments, the Plan did not receive a written description from Penvest of the nature of the investments made by Penvest for the Plan, and Cohen did not attempt to obtain any description of the Plan's investments until the summer of 1982. The Plan did receive monthly statements from Penvest, which consisted of three figures: the amount of principal invested, an unexplained interest figure, and the sum of those two figures.

In April 1982, Miller Druck hired a new controller, Arnold Hecht ("Hecht"). Hecht also performed services for the Plan under Cohen's direction. Upon reviewing the Plan's files and discovering that they contained no description of the Plan's investments, Hecht asked Cohen about the nature of Penvest's investments for the Plan. Cohen then authorized Hecht to ask Bedell for this information. Hecht's subsequent attempts to obtain this information from Penvest were unsuccessful. Hecht reported Penvest's lack of response directly to Cohen. In January 1983, Cohen instructed Hecht to write Penvest for this information. Hecht again received no response and reported this fact to Cohen.

The Plan received financial documentation of Penvest for the first time in October

1983.[1] This documentation consisted solely of an unaudited financial statement by Penvest for the year ending January 31, 1983. At his deposition, Cohen stated that after seeing Penvest's list of investments for the first time, he was not satisfied. On October 31, 1983, Hecht wrote to Penvest, at Cohen's request, asking for the return of $100,000.00 out of the original investment of $280,000. The Plan never obtained this or any other money from Penvest.

The Secretary has calculated the Plan's total loss, including interest, on the Plan's investment with Penvest as of December 31, 1987 to be $637,412.00. This damage figure represents the amount of Plan assets originally invested with Penvest, or $280,000, plus the lost opportunity cost which the Secretary calculated by using the adjusted prime interest rates set by the Secretary of the Treasury pursuant to §§ 6621 and 6622 of the Internal Revenue Code, 26 U.S.C. §§ 6621, 6622 (1987 Supp.). *See Brock v. Crapanzo*, 84 Civ. 1899, slip op. (S.D.Fla. July 23, 1986), *aff'd mem.*, 819 F.2d 1148 (11th Cir.1987); *Marshall v. Snyder*, 1 Empl.Ben. Cases (BNA) 1878 (E.D.N.Y.1979). The Secretary's calculations, which are set forth in Exhibit H to the Secretary's memorandum of law, are unrebutted.

In support of his motion, the Secretary has submitted the affidavit of Richard M. Ennis, a financial analyst knowledgeable in the management of institutional funds. According to Ennis's expert testimony, which is unrebutted, there are certain elements necessary to a prudent selection of a person or entity to invest ERISA plan assets. These considerations, which are also examples of common sense, would require the trustee to:

1. Evaluate the person's qualifications including:

a. His experience in the particular area of investments under consideration and with other ERISA plans.

b. His educational credentials.

c. Whether he is registered with the Securities and Exchange Commission under the Investment Advisors Act of 1940.

d. An independent assessment of his qualifications by means of:

 i. A widely enjoyed reputation in the business of investments;

 ii. Client references, and/or

 iii. The advice of a professional third-party consultant.

e. His record of past performance with investments of the type contemplated.

2. Ascertain the reasonableness of fees.

3. Review documents reflecting the relationship to be entered into.

4. Ensure adequate, periodic accountings in the future.

Cohen's investigation failed to touch upon any of these pertinent areas of inquiry.

On July 16, 1983, the Department of Labor ("Department") was notified of a private ERISA complaint charging Penvest with a violation of fiduciary duties. A copy of the complaint, which was captioned *Mahoney v. Penvest, Inc.*, 83 Civ. 5146 (MJL) and filed in this district, was sent to the Department under cover letter of counsel for the *Mahoney* plaintiffs. On January 3, 1984, Louis Joseph, Counsel for Litigation with the Department, sent a memorandum (the "Joseph Memo") to Charles Williamson, Assistant Administrator for Enforcement, enclosing a breakdown of the three year statute of limitations period for the *Mahoney* complaint against Penvest.

Finally, the Chapter 11 Trustee of Penvest has filed a complaint, *Ris v. Forest K. Bedell et al.*, 87 Civ. 4141, in this district alleging that a criminal conspiracy resulted in the Penvest bankruptcy.

---

**1.** Although neither Hecht nor Cohen could recall receiving financial statements from Penvest prior to October 1983, other than the monthly interest statements, an exhibit attached to the affidavit of Cohen's counsel submitted in opposition to the instant motion contains an unsigned letter from Bedell to Cohen dated October 21, 1982. The letter appears to be a cover letter to a statement of the assets of Penvest as of September 30, 1982. There is no indication that the letter was ever received or reviewed by anyone at Miller Druck and, therefore, the letter will be disregarded for the purposes of this motion.

*Conclusions*

*Breach of Fiduciary Duty*

The Secretary contends that Cohen breached his fiduciary duty under ERISA in connection with the selection of Bedell as an investment manager and the investment of Plan assets with Penvest. ERISA requires a pension fund fiduciary to act "solely in the interest" of a plan's participants and beneficiaries, and to discharge his duties "with the care, skill, prudence, and diligence ... that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character ...." 29 U.S.C. § 1104(a)(1)(B). A trustee who fails to adhere to these fiduciary standards may be held personally liable for any losses to a plan caused by his breach. 29 U.S.C. § 1109(a).

In *Katsaros v. Cody*, 744 F.2d 270 (2d Cir.), *cert. denied sub nom. Cody v. Donovan*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the Court of Appeals for this Circuit described the now well-settled standards for evaluating the prudence of a trustee's acts:

> Prudence is measured according to the objective "prudent person" standard developed in the common law of trusts. *Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir.1983), *cert. denied*, 464 U.S. 1040 [104 S.Ct. 704, 79 L.Ed.2d 169] (1984); S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4838, 4865 ([t]he fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts.) The court's task is to inquire "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 [104 S.Ct. 704, 79 L.Ed.2d 169] (1984); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir.1983) ("courts have focused the inquiry under the 'prudent man' rule

on a review of the fiduciary's independent investigation of the merits of a particular investment"). A trustee's lack of familiarity with investments is no excuse: under an objective standard trustees are to be judged "according to the standards of others 'acting in a like capacity and familiar with such matters.'" *Marshall v. Glass/Metal Association*, 507 F.Supp. 378, 384 (D.Haw.1980).

*Katsaros v. Cody*, 744 F.2d at 279; *see also Fink v. National Savings and Trust Co.*, 772 F.2d 951, 955 (D.C.Cir.1985). ERISA's prudence standard "is not that of a prudent lay person but rather that of a prudent fiduciary with experience dealing with a similar enterprise." *Marshall v. Snyder*, 1 Empl.Ben. Cases (BNA) 1878, 1886 (E.D.N. Y.1979); *see Donovan v. Mazzola*, 716 F.2d 1226, 1231–32 (9th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) ("Courts have also recognized that in enacting ERISA Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds.").

■ The test of prudence focuses on the trustee's conduct in investigating, evaluating and making the investment. *See Fink v. National Savings and Trust Co.*, 722 F.2d at 957 (D.C.Cir.1985) ("A fiduciary's independent investigation of the merits of a particular investment is at the heart of the prudent person standard."). While a trustee has a duty to seek independent advice where he lacks the requisite education, experience and skill, *Donovan v. Bierwirth*, 680 F.2d 263, 272–73 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), the trustee, nevertheless, must make his own decision based on that advice. *Donovan v. Mazzola*, 716 F.2d at 1234; *Withers v. Teachers Retirement System of the City of New York*, 447 F.Supp. 1248, 1254 (S.D.N.Y.1978), *aff'd. mem.*, 595 F.2d 1210 (2d Cir.1979) ("In the area of investment decisions, the obligation to exercise prudence [includes] an obligation to ... make independent inquiry into the merits of particular investments rather than to rely wholly on the advice of others.").

■ The failure to make any independent investigation and evaluation of a potential plan investment is a breach of fiduciary obligations, *Fink v. National Savings and Trust Co.*, 772 F.2d at 957, that may warrant an injunction against or the removal of the trustee and possibly the recovery of trustee fees paid for the investigative and evaluative services that went unperformed. *Id.* at 962 (Scalia, J. concurring in part and dissenting in part). Having found that a trustee has failed to investigate a particular investment adequately, however, a court must then examine whether, considering the facts that an adequate and thorough investigation would have revealed, the investment was objectively imprudent. *Id.* (Scalia, J., concurring in part and dissenting in part); *see also Katsaros v. Cody*, 744 F.2d at 279–80; *Withers v. Teachers' Retirement System of the City of New York*, 447 F.Supp. at 1254.

■ The Plan document designates both Cohen and Miller Druck as named fiduciaries. Under the Plan document, Cohen had the authority, *inter alia*, to invest Plan assets, and Miller Druck had the authority, *inter alia*, to appoint and monitor the trustees of the Plan and to appoint and monitor an investment manager to invest Plan assets. Thus, Cohen, as the trustee of the Plan, is a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21). *See Donovan v. Mercer*, 747 F.2d 304 (5th Cir.1984); *Freund v. Marshall & Ilsley Bank*, 1 Em.Ben. Cases (BNA) 1898, 1910 (W.D.Wisc.1979). As a practical matter, the nonfeasance or malfeasance of Cohen with respect to the Plan is also that of Miller Druck. *See Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987); *Dardaganis v. Grace Capital, Inc.*, 664 F.Supp. 105, 111–12 (S.D.N.Y.1987).

■ Applying the above principles to the facts of this case, Cohen's investigation and evaluation of Bedell and Penvest fell far short of the careful inquiry required of a trustee. When Cohen transferred $270,000 to Penvest in December 1980, he did not know the investment experience of Penvest or any of Penvest's employees. He had no information concerning the educational credentials of Penvest's employees, other than the fact that Bedell had a college degree. He did not know whether Penvest or Bedell was registered with the SEC as an investment advisor. He did not know the identity of other Penvest investors, and, therefore, had not received any references regarding Penvest. He did not know the nature of the investments to be made by Penvest on behalf of the Plan, other than that they were to be second mortgages primarily on residential properties. He did not know what fees would have to be paid to Penvest. He had no documentation or financial information relating to Penvest. In sum, based on Fagone's oral report, which the record reveals contained few concrete particulars with respect to Bedell or Penvest, Cohen invested $280,000 of Plan assets with Penvest.

Cohen was not entitled to rely on Fagone's or Singer's opinions that Bedell was a highly capable investment manager. He had a duty to review personally Bedell's investment history and to analyze the factual information that formed the basis for their opinions. *See Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). That he may not have possessed the requisite education, experience and skill to make a particular investment decision does not excuse his negligence. *Katsaros v. Cody*, 744 F.2d at 279. Having accepted the responsibility and authority of a trustee's position, Cohen became subject to certain standards and obligations set by law. Here the facts show that Cohen failed to perform his fiduciary obligations under ERISA to investigate and evaluate a proposed investment of Plan assets.

Although the Secretary has established that Cohen breached his fiduciary duty to investigate and evaluate Bedell and Penvest adequately prior to investing with them, the record does not contain sufficient facts for the court to find that the investment decision was objectively imprudent and, as a consequence, that Cohen is liable for the loss to the Plan on that basis. Such

findings would require consideration of what facts Cohen would have discovered had he made the necessary investigation. *See Fink v. National Savings and Trust Co.*, 772 F.2d. at 962 (Scalia, J. concurring in part and dissenting in part). The cases that hold a trustee liable for such losses have based the trustee's liability on findings of fact that clearly established the unsoundness of the investment decision at the time it was made. *See, e.g., Katsaros v. Cody*, 744 F.2d at 279 (trustee liability based on finding that a "reasonable investigation would have revealed evidence that the loan was totally unsound"); *Donovan v. Mazzola*, 716 F.2d at 1232–35 (factual findings establish imprudence of trustees' acts at the time they engaged in the challenged transactions). Here, the record contains no facts that show what Cohen would have discovered about Bedell and Penvest had he investigated them properly before investing Plan assets with them.

Nevertheless, Cohen's common law and ERISA responsibilities as a trustee did not end with the initial decision to invest Plan assets with Penvest. *See Public Service Co. of Colorado v. Chase Manhattan Bank*, 577 F.Supp. 92, 104 (S.D.N.Y. 1983) (bank trustee for public pension fund breached fiduciary duty by failing to monitor mortgage investment adequately and by failing to terminate investment when it became unsuitable). A fiduciary must ascertain within a reasonable time whether an agent to whom he has delegated a trust power is properly carrying out his responsibilities. G. Bogert, *Trusts and Trustees*, § 557 at 155 (Revised 2d Ed. 1980). If a fiduciary is negligent in selecting, instructing or supervising an agent, he will be held liable to the trust beneficiary for any resulting loss. *Id.* at 156–57. Cohen had a duty to monitor Penvest's performance with reasonable diligence and to withdraw the investment if it became clear or should have become clear that the investment was no longer proper for the Plan. *Public Service Co. of Colorado v. Chase Manhattan Bank*, 577 F.Supp. at 104; *cf. Morrissey v. Curran*, 567 F.2d 546, 548–49 (2d Cir.1977) ("prudent man" rule imposes duty on ERISA trustee to dispose of any part of trust estate which would be improper to keep).

Cohen cannot escape liability by pointing to the authority delegated to Penvest to manage Plan assets. ERISA permits trustees of a plan to appoint an investment manager to manage plan assets. *See* 29 U.S.C. § 1102(c)(3). Where such an appointment has been properly made, the trustees are not liable for the acts or omissions of the investment manager. *See* 29 U.S.C. § 1105(d)(1). However, the term "investment manager" is defined in § 3(38) of ERISA, 29 U.S.C. § 1002(38) to mean any fiduciary

(A) who has the power to manage, acquire, or dispose of any asset of a plan;

(B) who is (i) registered as an investment adviser under the Investment Advisers Act of 1940 ...; (ii) is a bank, as defined in that Act; or (iii) is an insurance company ...; and

(C) has acknowledged in writing that he is a fiduciary with respect to the plan.

Although Bedell and Penvest did acquire the power to dispose of Plan assets, they did not acknowledge in writing a fiduciary status with respect to the Plan. Furthermore, Bedell and Penvest are not registered as investment advisers under the Investment Advisers Act of 1940, and neither is a bank or an insurance company. Therefore, because Bedell and Penvest were not investment managers of the Plan as that term is defined under ERISA, Cohen's investment of Plan assets with Penvest does not shield him from liability for their acts or omissions with respect to Plan assets.

The Plan never received written documentation from Penvest describing the nature of the investments made by Penvest for the Plan. The monthly statements that the Plan received from Penvest regarding its investments consisted of three figures: the original amount invested by the Plan, an accrued interest figure, and the sum of those two amounts. The reports do not explain the source of the interest figure nor how it was calculated, and Cohen never requested any explanation. In fact, Cohen

made no attempt to obtain a written description of the Plan's investments until sometime during the summer of 1982, when Hecht tried· unsuccessfully to obtain this information from Bedell. Even though Cohen was aware of the fact that Hecht was unable to ascertain the nature of Penvest's investments on behalf of the Plan, Cohen did not attempt to divest the Plan's assets until the end of October 1983.

■ Cohen's failure to apprise himself of the nature of the investments made by Penvest on behalf of the Plan and his acquiescence in Penvest's failure to account to the Plan establish a breach of his fiduciary obligation to monitor the performance of the Plan's investments. Cohen's post-investment breach of his fiduciary duties must be viewed in the context of his failure to gather information concerning the details of Penvest's investment practices prior to the investment decision. Once Cohen became aware that Penvest was resisting the Plan's requests for information concerning the Plan's investments, he should have acted promptly to ensure the security of the Plan's assets, if necessary, by withdrawing the Plan's investment. Instead, he allowed more than a year to elapse before directing Hecht to ask Bedell to "distribute $100,000" to the Plan. Cohen's concern for the status of the Plan's investment with Penvest was too little, too late. Pursuant to § 409(a) of ERISA, 29 U.S.C. § 1109(a), Cohen and Miller Druck, as fiduciaries with respect to the Plan, are personally, jointly and severally liable for all the losses resulting to the Plan from their fiduciary breaches. *See Donovan v. Bierwirth*, 680 F.2d at 273; *Lowen v. Tower Asset Management*, 829 F.2d at 1217.

*Statute of Limitations*

■ The complaint is not barred by the statute of limitations. The *Mahoney* com-

plaint[2] was served upon plaintiffs in July 1983 and this action was instituted in December 1986. Section 413(a) of ERISA, 29 U.S.C. § 1113(a), provides that no suit with respect to a fiduciary's breach of duty under ERISA shall be brought after the earlier of (1) six years after the date of breach or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

There is no dispute that the *Mahoney* complaint contained nothing that would have given the Secretary actual knowledge of improper conduct on the part of Cohen and Miller Druck.[3] Cohen urges the court to find, however, that the *Mahoney* complaint was a "report" within the meaning of § 413(a)(2)(B) such that the Secretary can be said to have had constructive knowledge of Cohen's breach of fiduciary duty.

Cohen's contention raises a question of statutory construction as to what constitutes a report filed with the Secretary under § 413(a)(2)(B) of ERISA. On this issue, the statute and the cases are clear. As the Court of Appeals for the District of Columbia stated in *Fink v. National Savings and Trust Co.*, 772 F.2d at 956:

The statute provides that constructive knowledge is obtained through reports filed with the Secretary of Labor from which the plaintiff obtained or "could reasonably be expected to have obtained knowledge of such breach or violation." These forms are annual reports required

---

**2.** The *"Mahoney* complaint" refers to the actual complaint, and all documents attached to it that were served on the Secretary in July, 1983.

**3.** Cohen argues that the Joseph Memo, the internal Department document analyzing the statute of limitations period for claims against Penvest, constitutes an admission by the Secretary that it had actual knowledge of the Miller Druck fidu-

ciaries' breach of their duties under ERISA and that July 1986 was the cut-off date for a suit against Cohen and Miller Druck. Despite having been granted limited discovery with respect to this document, Cohen has failed to offer any evidence that supports his hypothesis in this regard.

under 29 U.S.C. §§ 1023 & 1024, and are referred to, in common parlance, as "Forms 5500." Under ERISA, a Form 5500 must include, *inter alia,* a statement of assets and liabilities, a statement of changes in net assets available for plan benefits, a statement of income and expenses, and the terms and amount of any indebtedness. *See* 29 U.S.C. § 1023(b)(2) & (3).

*See also TIC International Corp. v. Continental Casualty Co.,* 785 F.2d 168, 170 (7th Cir.1986) (upholding finding that the Secretary "could reasonably be expected to have obtained knowledge" of trustee's breach from the plan's annual report, *i.e.,* Form 5500); *Davidson v. Cook,* 567 F.Supp. 225, 235 (E.D.Va.1983), *aff'd mem.,* 734 F.2d 10 (4th Cir.), *cert. denied sub nom. Accardi v. Davidson,* 469 U.S. 899, 105 S.Ct. 275, 83 L.Ed.2d 211 (1984) (Form 5500 provides basis for § 413 analysis).

Thus, Forms 5500 are the reports which under § 413(a)(2)(B) could give rise to constructive knowledge of fiduciary breaches. The Secretary can reasonably be expected to obtain knowledge of breaches of fiduciary duty from these reports because their contents are specifically prescribed by ERISA. A report filed with the Secretary provides a limited universe of prescribed facts which, because they are required to be filed with the Secretary and become public information, *see* 29 U.S.C. § 1026, a plaintiff alleging breach of a fiduciary duty will be presumed to know.

The *Mahoney* complaint was served upon the Secretary pursuant to § 502(h) of ERISA, 29 U.S.C. 1132(h), not filed with the Secretary under § 104. ERISA does not prescribe the contents or the format of private litigants' complaints as it does for annual reports. A Form 5500 filed with the Secretary pursuant to § 104 contains facts that are sworn to under penalty of perjury and substantiated by actuarial reports and financial audits. By comparison, a private litigant's complaint contains allegations that are unsworn and unproven. Moreover, ERISA specifically requires a plan administrator to file reports, and those who fail to file the reports with the Secretary do so at the risk of criminal penalties.

*See* 29 U.S.C. § 1131. In short, there is no basis in either the statute or the case law for a finding that a private litigant's complaint, like the *Mahoney* complaint, can constitute a report filed with the Secretary, as contemplated in § 413(a)(2)(B) of ERISA.

■ Even if the *Mahoney* complaint could be deemed to constitute a report under § 413(a)(2)(B), however, it does not contain information from which the Secretary "could reasonably be expected to have obtained knowledge" of Cohen's breach. The alleged fiduciary breaches of Cohen and Miller Druck derive from their failure adequately to investigate the qualifications of Penvest prior to investing plan assets, and their subsequent failure to monitor that investment. The *Mahoney* complaint describes alleged fiduciary breaches by Penvest with respect to its handling of the assets of another pension plan. However, the *Mahoney* complaint does not mention Cohen, Miller Druck or the Plan and, thus, would not have alerted a reasonably prudent person to a probable violation on the part of Miller Druck fiduciaries. *Cf. Brock v. TIC International Corp.,* 785 F.2d at 171 (discovery of fiduciary's breach "not even a matter of reading between the lines"); *Fink v. National Savings and Trust Co.,* 772 F.2d at 957 (Form 5500 did not provide information regarding the trustee's failure to evaluate the prudence of its acts).

Upon the findings and conclusions set forth above, the liability of Cohen and Miller Druck for losses to the Plan resulting from the decision to invest Plan assets with Penvest has been established. Under the court's authority to fashion remedies particular to the facts of the case to protect Plan assets from future dissipation, *see Donovan v. Mazzola,* 716 F.2d at 1253, summary judgment will be entered in favor of the Secretary as follows:

(1) Cohen and Miller Druck shall reimburse the Plan in the amount of $637,-412.00;

(2) Cohen and Miller Druck shall be permanently enjoined from engaging in con-

duct in the future that violates their fiduciary duties under ERISA; and,

(3) a qualified investment manager shall be appointed under such conditions as the parties can mutually agree to manage Plan assets at all times in the future.

The parties are directed to submit judgment on ten (10) days notice.

IT IS SO ORDERED.