UNITED STATES of America and Robert B. Reich, Secretary of the United States Department of Labor, Plaintiffs,

v.

MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK, et al., Defendants.

No. 94 Civ. 6487 (RWS).

United States District Court, S.D. New York.

May 15, 1995.

Order Denying Reconsideration Aug. 18, 1995.

Mary Jo White, U.S. Atty., S.D.N.Y. (Allan N. Taffet, Manvin S. Mayell, Aimee B. Wolfson, of counsel), New York City, for U.S.

Dominic F. Amorosa, New York City, for James Lupo.

Andrew M. Lawler, P.C. (Andrew M. Lawler, Maurice M. McDermott, of counsel), New York City, for Joseph Fater.

## OPINION

SWEET, District Judge.

Plaintiffs, the United States of America and Robert B. Reich, Secretary of the United States Department of Labor (collectively the "Government") moved for an order pursuant to Rule 56, Fed.R.Civ.P., granting them partial summary judgment on Claim V against defendants James Lupo ("Lupo") and Joseph Fater ("Fater"), and Claim VII (against Fater), which charge ERISA violations based on the Pension and Welfare Funds' purchase of the 18th Street building in Manhattan and 6060 Indian Creek in Miami Beach, Florida.

Defendant Fater has moved for partial summary judgment on the Fifth and Seventh Claims for Relief sought by the complaint, insofar as the claims allege that he breached his fiduciary duties as a trustee of the Mason Tenders District Council's Pension Fund and Welfare Fund.

For the following reasons, the Government's motion is granted and Fater's cross-motion is denied.

### The Parties

Lupo and Fater are two former Trustees of the Mason Tenders District Council of Greater New York Pension and Welfare Fund (collectively the "Trust Funds").

The Mason Tenders District Council represents workers throughout New York City and on Long Island who perform numerous laborer jobs including general labor, brick hauling, and asbestos removal. The District Council also holds and administers, jointly and with contributing employers, seven multi-million dollar trust funds. The Trust Funds are "employee benefit plans" within the meaning of the Employee Retirement Income Security Act ("ERISA") § 3(3), 29 U.S.C. § 1002(3). The District Council Pension and Welfare Fund are two of the largest Trust Funds. The Pension Fund collects contributions from employers in order to provide pensions to retired members of the Locals. As of 1992, the Pension Fund covered more than 6,600 current and retired union members and had assets of more than $180 million. The Welfare Fund pays medical benefits to members and retirees of the Locals and their families. In 1987, the Welfare Fund had net assets of approximately $30 million; by 1992, the Welfare Fund had net assets of less than $15 million.

### Prior Proceedings

The complaint in this action was filed in September 1994. Summary judgment against these defendants on these counts was requested in a motion filed by the Government on November 1, 1994. On consent of all parties the argument on these claims against Fater and Lupo were adjourned until February, 1994.

On January 6, 1994 Fater filed a cross-motion for partial summary judgment with respect to the same claims, five and seven.

Argument was heard on these motions on February 22, 1995 and the motions were considered fully submitted as of that date.

### Facts

### The West 18th Street Property

The Fifth Claim alleges that Fater and Lupo and the other Pension Fund trustees "caused the Pension fund to purchase the 18th Street Property from [the seller] for $24 million, which was $16.5 more that the seller had paid for the building less than ten months earlier."

A report from DiFranco Realty dated December 29, 1989 appraised the value of the property at $15,950,000. A report from Diane Mistretta dated January 2, 1990 appraised the value of the property at $15,850,-000. A report from Wasserman Realty Ser-

vice dated January 4, 1990 valued the property at $8,300,000.

On February 1, 1990 the Pension Fund loaned $15,850,000 to Ronald Miceli ("Miceli") to purchase the 18th Street building. On that same date Miceli purchased the building for $7,465,000.

On November 13, 1990 the Pension Fund trustees met and approved unanimously the purchase of the 18th Street Property from Miceli, established a realty corporation to hold title to the property, named Fater President of the Corporation and authorized Gerard W. Cunningham ("Cunningham") to execute the purchase.

Lupo attended the November 13 meeting. Fater was not present at the meeting and took no part in the vote. His counsel, Cunningham, was present at the meeting and presented the Real Estate Committee report which included the discussion of the 18th Street property. Fater was on the Real Estate Committee at that time.

The building was purchased by the Pension Fund on November 27, 1990 for $24,000,000.

### The Florida Property

The complaint alleges that "... [t]rustee ... Fater ... approved the Welfare Fund's purchase of 6060 Indian Creek [Drive, Miami Beach, Florida] for the price of $1.45 million, $600,000 more than the valuation contained in any contemporaneous valuation of the property."

A June 10, 1987 appraisal letter from Appraisal Professionals, Inc. addressed to Frank Lupo, Trustee, Mason Tenders District Council, estimated that the market value of the property was between $750,000.00 and $850,000.00.

The purchase of the property for $1,400,000 was approved unanimously at the October 28, 1987 trustees' meeting. Fater was not present at the meeting. His counsel, Gerard W. Cunningham ("Cunningham"), was present and gave the Real Estate Committee report including a discussion of the Florida property. Fater was a member of the Real Estate Committee.

At a meeting of the trustees on April 6, 1988, at which Fater was present, minutes of the October 28, 1987 meeting, including discussion of the Florida property, were approved unanimously without alteration.

### Discussion

### Defendants Breached their Fiduciary Duties as Trustees

■ A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the burden of proving that no genuine issue of material fact exists. *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd*, 954 F.2d 62 (2d Cir.1992).

The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady*, 863 F.2d at 210; *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983); *Swan Brewery Co. v. United States Trust Co.*, 832 F.Supp. 714, 717 (S.D.N.Y.1993).

■ The remedy of summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Government contends that Fater and Lupo breached their fiduciary duties under ERISA in connection with the purchase of the 18th Street property and additionally that Fater breached his duty in connection with the Florida property.

ERISA requires a pension fund fiduciary to act "solely in the interest" of a plan's participants and beneficiaries, and to discharge his duties "with the care, skill, prudence, and diligence ... that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character...." 29 U.S.C. § 1104(a)(1)(B).

In *Katsaros v. Cody,* 744 F.2d 270 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), the Court of Appeals described the now well-settled standards for evaluating the prudence of a trustee's acts:

Prudence is measured according to the objective "prudent person" standard developed in the common law of trusts. *Donovan v. Mazzola,* 716 F.2d 1226, 1231 (9th Cir.1983), *cert. denied,* 464 U.S. 1040 [104 S.Ct. 704, 79 L.Ed.2d 169] (1984); S.Rep. No. 127, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4838, 4865 ( [t]he fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts.) The court's task is to inquire "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Donovan v. Mazzola,* 716 F.2d 1226, 1232 (9th Cir.1983), *cert. denied,* 464 U.S. 1040 [104 S.Ct. 704, 79 L.Ed.2d 169] (1984); *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir.1983) ("courts have focused the inquiry under the 'prudent man' rule on a review of the fiduciary's independent investigation of the merits of a particular investment"). A trustee's lack of familiarity with investments is no excuse: under an objective standard trustees are to be judged "according to the standards of others 'acting in a like capacity and familiar

with such matters.' " *Marshall v. Glass/Metal Ass'n,* 507 F.Supp. 378, 384 (D.Haw.1980).

*Katsaros v. Cody,* 744 F.2d at 279; *see also Fink v. National Savings and Trust Co.,* 772 F.2d 951, 955 (D.C.Cir.1985).

■ ERISA's prudence standard "is not that of a prudent lay person but rather that of a prudent fiduciary with experience dealing with a similar enterprise." *Marshall v. Snyder,* 1 Empl.Ben.Cases (BNA) 1878, 1886 (E.D.N.Y.1979); *see Donovan v. Mazzola,* 716 F.2d at 1231–32 ("Courts have also recognized that in enacting ERISA Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds."); indeed, the Second Circuit has recognized that the duties of an ERISA trustee are "the highest known to the law." *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). In sum, courts have construed the "prudent person standard" under ERISA as an "objective standard, requiring the fiduciary (1) to employ proper methods to investigate, evaluate and structure the investment; (2) to act in a manner as would others who have a capacity and familiarity with such matters; and (3) to exercise independent judgment when making investment decisions." *Lanka v. O'Higgins,* 810 F.Supp. 379, 387 (N.D.N.Y. 1992) (citations omitted).

■ The test of prudence focuses on the trustee's conduct in investigating, evaluating and making the investment. *See Fink v. National Savings and Trust Co.,* 772 F.2d 951, 957 (D.C.Cir.1985) ("A fiduciary's independent investigation of the merits of a particular investment is at the heart of the prudent person standard."). While a trustee has a duty to seek independent advice where he lacks the requisite education, experience and skill, *Donovan v. Bierwirth,* 680 F.2d at 272–73, the trustee, nevertheless, must make his own decision based on that advice. *Donovan v. Mazzola,* 716 F.2d at 1234; *Withers v. Teachers Retirement System of the City of New York,* 447 F.Supp. 1248, 1254 (S.D.N.Y. 1978), *aff'd. mem.,* 595 F.2d 1210 (2d Cir. 1979) ("In the area of investment decisions, the obligation to exercise prudence [includes]

an obligation to ... make independent inquiry into the merits of particular investments rather than to rely wholly on the advice of others.").

 The failure to make any independent investigation and evaluation of a potential plan investment is a breach of fiduciary obligations, *Fink v. National Savs. & Trust Co.,* 772 F.2d at 957, that may warrant an injunction against or the removal of the trustee and possibly the recovery of trustee fees paid for the investigative and evaluative services that went unperformed. *Id.* at 962. Having found that a trustee has failed to investigate a particular investment adequately, however, a court must then examine whether, considering the facts that an adequate and thorough investigation would have revealed, the investment was objectively imprudent. *Id.* (Scalia, J., concurring in part and dissenting in part); *see also Katsaros v. Cody,* 744 F.2d at 279–80; *Withers v. Teachers' Retirement System of the City of New York,* 447 F.Supp. at 1254.

 Lupo was a trustee at the time that the 18th Street property was purchased and Fater was a trustee at the time that both properties were purchased. Applying the above principles to the facts of this case, the lack of any independent investigation of the purchase of these properties failed the careful inquiry required of a trustee. In response to this motion neither Lupo or Fater claimed that they made the independent investigation required.

Specifically, in relation to the 18th Street property, the Government alleges in its papers, and the defendants have not refuted the following:

— the Trustees failed to obtain, let alone scrutinize, any valuation or appraisal of the building in or about November 1990 before approving of the Pension Fund's $24 million purchase of the 18th Street building;

— the Trustees failed to ascertain the identity of the seller—which would have revealed that the seller was the identical person who had received the $15.85 million loan from the Pension Fund to purchase the building ten months earlier;

— the Trustees did not review the two appraisals done by Mistretta and DiFranco ten months earlier, which valued the building at an inflated price, but one that was still *$8 million dollars lower* than the purchase price the Trustees approved in November 1990;

— the Trustees failed to review the Wasserman Realty appraisal, prepared less than a year earlier, which valued the building at $8.34 million;

— the Trustees failed to participate in, or in any way monitor, the negotiations over the purchase price for the building—or even to learn whether any such negotiations had occurred; and

— the Trustees failed to compare the price paid—$24 million—with the price of other comparable buildings to ensure that the price was reasonable.

The Government further alleges that less than one year after the Pension Fund's $24 million dollar purchase, the Pension Fund retained Cushman & Wakefield to conduct a comprehensive analysis of the 18th Street building. Following its review, Cushman & Wakefield determined that as of September 1991, the building was worth only $5 million. The Government argues that this is true despite the Pension Funds' expenditure of an additional $5.62 million in renovations at 18th Street in the ten months following its purchase. (As of December 31, 1992, the Pension Fund itself valued the 18th Street building as having a "fair value" of only $5 million).

Finally, the Trustees' further breach of their fiduciary duties is established by a single omission on their collective part: they approved of the purchase of the 18th Street building for $24 million *without* securing the advice or approval of a "Qualified Professional Asset Manager" ("QPAM"). In so doing, the Trustees lost $10 million in insurance coverage for their investment. The Pension Fund's insurance carrier expressly excluded insurance coverage for real estate investments unless the real estate investment was:

Specifically directed or approved by and managed by a Qualified Professional Asset Manager ("QPAM") as defined by Prohib-

ited Transaction Class–Exemption 84–14 (March 8, 1984), with substantial experience in real estate and/or mortgages, and which either does not violate the prohibited transaction provisions of Section 406(a) and (b) of ERISA, 29 U.S.C. § 1106(a) and (b), or is exempted from those provisions[.]

The Trustees entered into this $24 million purchase, having failed to obtain a contemporaneous appraisal, and having failed to obtain the services of any outside real estate expert advisor, or a "QPAM" as required by the Pension Fund's insurance policy. None of the allegations involving the lack of investigation or the failure to obtain a "QPAM" are disputed by defendants.

With regard to the Florida property, the Government alleges and Fater does not deny that the property, with a market value of $750,000 to $850,000, was purchased for $1,450,000 by the Fund. Nor does Fater deny that he made no independent inquiry into the property nor did he review the certified letter assessing the value of the property at $600,000 less than the purchase price.

Lupo argues that he acted under advice of counsel and approved the transaction while doing his "good-faith best to represent the Fund in these transactions in a prudent way." The duty of trustees to conduct independent investigations of the merits of the investment is clear under ERISA. *See Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Whitfield v. Cohen,* 682 F.Supp. 188, 195 (S.D.N.Y.1988) ("The failure to make any independent investigation and evaluation of a potential plan investment is a breach of fiduciary obligations.").

■ Good faith alone is not recognized as a defense to a breach of fiduciary duties. *See Reich v. King,* 867 F.Supp. 341, 343 (D.Md.1994) ("a fiduciary's subjective good faith belief of his prudence will not insulate him from liability"); *Lanka v. O'Higgins,* 810 F.Supp. 379, 387 (N.D.N.Y.1992) (same).

■ Further, fiduciary obligations under ERISA cannot be avoided by asserting misplaced reliance on counsel. *See Donovan v. Mazzola,* 716 F.2d 1226, 1234 (9th Cir.1983) ("reliance on counsel's advice, without more, cannot be a complete defense to an imprudence charge"), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *Katsaros v. Cody,* 568 F.Supp. 360, 369 n. 12 (E.D.N.Y.1983) ("the retention of counsel . . . does not relieve a fiduciary of his duty to investigate"), *aff'd,* 744 F.2d 270 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). In this case a review of the appraisals alone would have raised questions in a prudent trustee's mind.

While bad advice from counsel may provide a cause of action against the counsel, it does not shield the trustee from liability under ERISA. There are no claims by Lupo that he independently investigated the purchase of the 18th Street Property. Absent such a claim and in the face of the imprudent purchase, partial summary judgment on liability is granted.

■ Fater's 3–G statement states that he was not present at the Trustee's meetings where the purchases of the West 18th Street and Florida properties were approved. This does not relieve Fater of his fiduciary duty to the Funds with respect to these properties. Fater was represented at both meetings by Cunningham, he was also a member of the Real Estate Committee that recommended the purchases. Finally, his fiduciary duty under ERISA is continuous. *See Cohen,* 682 F.Supp. at 196 (fiduciary "had a duty to monitor performance with reasonable diligence and to withdraw the investment if it became clear or should have become clear that the investment was no longer proper for the Plan"). Liability for the breach of this duty is apparent on Fater's part regarding the two purchases discussed in this Opinion and found in Counts Five and Seven of the Government's amended complaint. In his declaration attached to his counsel's Reply Declaration, Fater states that he was not aware of the purchases until after they were made. His duty continues such that, at the very least, once he knew of the purchases he should have acted to ensure that they were prudent investments. He did not.

## Conclusion

For the reasons set forth above, the Government's motion for summary judgment on liability on Claim V as it pertains to Lupo and Fater and Claim VII as it pertains to Fater is granted. Fater's cross-motion is denied.

It is so ordered.

## ORDER DENYING RECONSIDERATION

Defendants Joseph Fater ("Fater") and James Lupo ("Lupo") have moved for an order permitting reconsideration of the Court's decision and order, dated May 15, 1995, (the "Opinion"), which (1) granted the motion of plaintiffs United States of America and Robert B. Reich, Secretary of the United States Department of Labor (collectively, the "Government"), for partial summary judgment on its claims for ERISA violations in connection with the Pension and Welfare Funds' purchases of certain real property located in New York, New York and Miami Beach, Florida and (2) denied Fater's cross-motion for partial summary judgment on the same claims.

For the following reasons, Defendants' motion will be denied.

### Background

The parties, prior proceedings and facts underlying this action are set forth in the Opinion, familiarity with which is assumed. *See United States and Robert B. Reich v. Mason Tenders Dist. Council of Greater N.Y., et al.,* 909 F.Supp. 882, (S.D.N.Y.1995). On June 7, the Government submitted a proposed Partial Final Judgment Against Defendants Joseph Fater and James Lupo (the "Final Judgment"). Subsequently, at the request of the Defendants, the Government agreed not to seek entry of the Final Judgment until the Court had an opportunity to consider the Defendants' instant motion for reargument.

### Discussion

 Local Rule 3(j) provides in pertinent part:

There shall be served with the notice of motion a memorandum setting forth con-cisely the matters or controlling decisions which counsel believes the court has overlooked.

Thus, to be entitled to reargument under Local Rule 3(j), the plaintiff must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002, 1008 (S.D.N.Y.1992); *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y.1991); *Ashley Meadows Farm Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y.1985).

 Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. *See Morser v. AT & T Information Systems,* 715 F.Supp. 516 517 (S.D.N.Y.1989); *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). Therefore, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y.1989).

 Defendants have not directed this Court's attention to a controlling case which the Court overlooked in rendering the Opinion. Instead, Defendants contend that the Court overlooked that part of Fater's Declaration in which he states that he did not authorize his attorney, Gerard Cunningham, to act on his behalf at the trustees' meetings at which the purchases of the 18th Street and Florida properties were approved. Defendants argue that the Court would not have found that Fater, through his attorney, had approved the two real estate purchases if the

Court had considered the denial contained in Fater's Declaration.

Defendants' liability does not depend on a definitive finding that they affirmatively acted to approve the real estate purchases but, rather, is based on the conclusion that, through various of their actions and omissions, they failed to discharge their fiduciary obligations under ERISA "with the care, skill, prudence, and diligence ... that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character." 29 U.S.C. § 1104(a)(1)(B); *see also Fink v. National Sav. and Trust Co.,* 772 F.2d 951, 955 (D.C.C.1985); *Marshall v. Snyder,* 1 Empl. Ben. Cases (BNA) 1878, 1886 (E.D.N.Y. 1979).

■ In determining whether a defendant has discharged his fiduciary obligations, a court's task is "to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed appropriate methods to investigate the merits of the investment and to structure the investment." *Katsaros v. Cody,* 744 F.2d 270 (2d Cir.1984) *quoting Donovan v. Mazzola,* 716 F.2d 1226, 1232 (9th Cir.1983). In light of ERISA's command that trust fund fiduciaries act solely in the interest of a fund's participants, the Court is unable to say which constitutes the greater breach of fiduciary obligations—actively approving the purchase of a property for over $8 million more than its appraised value, or remaining ignorant of a $24 million purchase until after it has occurred. In either case, the fiduciary has failed to act as a "prudent fiduciary with experience dealing with a similar enterprise." *Marshall v. Snyder,* 1 Empl.Ben. Cases

(BNA) 1878, 1886 (E.D.N.Y.1979); *see also Whitfield v. Cohen,* 682 F.Supp. 188, 195 (S.D.N.Y.1988) ("The failure to make any independent investigation and evaluation of a potential plan investment is a breach of fiduciary obligations.").

Defendants contend that "the actions and inquiries that the Court says should have been undertaken prior to the approval of the purchases presuppose that Mr. Fater knew in advance of the contemplated purchases." The Opinion does not so state.

■ In addition, Defendants argue for the first time that Plaintiffs' claims for ERISA violations are barred by ERISA's statute of limitations.[1] The statute of limitations is an affirmative defense under Federal Rule of Civil Procedure 8(c)[2] and, therefore, must be asserted in a party's responsive pleading "at the earliest possible moment," or else it is deemed to be waived. *Davis v. Bryan,* 810 F.2d 42, 44 (2d Cir.1987).

Nevertheless, Defendants argue that they had no reason to assert the statute of limitations defense in their responsive pleading because Plaintiffs' complaint alleged fraud or concealment, thus triggering ERISA's six-year statute of limitations. Defendants now contend that Plaintiffs had actual knowledge of the alleged ERISA violations, thus triggering instead the *three*-year statute of limitations contained in 29 U.S.C. § 1113(a)(2). Defendants also contend that Plaintiffs, in their motion for partial summary judgment, did not make a showing of fraud or concealment sufficient to trigger the six-year statute of limitations.

In any event, in order to trigger the three-year limitations period, Defendants must also

---

1. ERISA's statute of limitations provides
 (a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of
 (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
 (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation ...

 except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.
 29 U.S.C. § 1113.

2. Fed.R.Civ.P. 8(c) provides, in pertinent part In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense.

 

show that Plaintiffs had "actual knowledge" of ERISA violations. 29 U.S.C. § 1113(a)(2). The only evidence Defendants present in support of such a showing is a July 1991 newspaper article in *Newsday* which quotes a Labor Department "organized crime investigator" as saying of the New York and Florida real estate transactions: "It certainly looks interesting." The most that can be inferred from the *Newsday* article is that the United States Department of Labor was alert to the need to conduct an investigation into the transactions. The article does not support an inference that Plaintiffs had actual knowledge of ERISA violations more than three years prior to filing suit.

■ Moreover, ERISA's three-year limitations period is not triggered by a showing that a plaintiff had merely constructive knowledge of ERISA violations three years prior to filing suit. *See Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir.1992) (holding that 29 U.S.C. § 1113 requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists); *see also Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.1987) ("[t]o charge the Secretary [of Labor] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues"); *Ziegler v. Connecticut General Life Ins. Co.*, 916 F.2d 548 (9th Cir.1990). As the Court noted in *Gluck*, "Congress knew how to require constructive knowledge; it required it in [ERISA] sections 1303 and 1370." 960 F.2d at 1176. Thus, Congress' failure to call for constructive knowledge in section 1113 was not accidental.

Defendants argue that whether Plaintiffs had "actual knowledge" of ERISA violations more than three years prior to filing this action is a factual question to be determined by the trier of fact. On a motion for reargument, the movant is burdened to demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *Fulani v. Brady*, 149 F.R.D. 501, 503 (S.D.N.Y.1993). Defendants had ample opportunity to raise a statute of limitations defense in their response to Plaintiffs' summary judgment motion. Federal Rule of Civil Procedure 8(c) dictates that their failure to do so constitutes a waiver of the defense.

*Conclusion*

For the reasons stated above, Defendants' motion for an order permitting reconsideration of the Opinion is hereby denied. Because the Opinion did not make a factual finding on the issue of damages, and because the record presently before the Court is insufficient to support such a factual finding, entry of the Final Judgment at this time would be inappropriate. The parties are hereby ordered to submit, within 30 days, evidence bearing on the question whether the Final Judgment accurately assesses the damages against each Defendant.

It is so ordered.